IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATTERN DESIGN LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>WE ARE SECHEY INC., et al.,<br><br>    Defendants. | Case No. 24-cv-02604-CRB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS** |

## I.  BACKGROUND

This case concerns a start-up's missed payments and unrealized promises to pay pursuant to a contract for web design services. Plaintiff Pattern Design LLC, a website design company, alleges that Defendants We are Sechey Inc. (We are Sechey), Sechey, Inc. (Sechey), and Emily Heintz: (1) failed to meet their payment obligations and (2) never intended to meet those obligations. Pattern invokes alter ego and mutual mistake as theories for holding Sechey and Heintz liable for the alleged breach and promissory fraud despite them not being named as parties to the contract. Defendants move to dismiss Pattern's claims for failure to state a claim under Federal Rules of Civil Procedure 12(b)(6) and 9(b). The Court **DENIES** Defendants' motion to dismiss the breach of contract claim as to Sechey and otherwise **GRANTS** the motion.

### A.   Parties

Pattern is a digital design and e-commerce company that provides web-design services. Compl. (dkt. 1) ¶¶ 1, 2, 44. It is a California limited liability company with its principal place of business in Novato, California. Id. ¶ 2. Sechey is a retail start-up that sells non-alcoholic beverages and markets through its website, Sechey.com. Id. ¶¶ 5, 9,

Ex. 2. Sechey is a Delaware corporation with its principal place of business in South Carolina. Id. ¶ 5. Emily Heintz is Sechey's founder. Id. ¶ 5, Ex. 2. "We are Sechey" is allegedly an "unincorporated business entity." Id. ¶ 4; Opp'n (dkt. 21) at 5, n. 1. During the hearing, defense counsel represented that "We are Sechey" is not an actual entity.

### B. The Complaint

The Court "presume[s] all factual allegations of the complaint to be true and draw[s] all reasonable inferences in favor of the nonmoving party." Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987).

In early 2022, mutual connections in the e-commerce industry introduced Heintz and Pattern's executives. Compl. ¶ 9. Pattern's executives "felt a connection to Heintz's vision and [Sechey's] mission." Id. In August 2022, Pattern and "We are Sechey" executed a Master Services Agreement (MSA) and Statement of Work (SOW) (collectively, the Contract). Id. Ex. 1. Heintz signed on behalf of "We are Sechey" as its "Founder." Id. Sechey (as opposed to "We are Sechey") is not listed as a party to the Contract. Id.

Under the Contract, Pattern agreed to "complete[ly] redesign" Sechey's website for $125,000. Id. ¶¶ 1, 11, 12, Ex. 1. The SOW set forth the following payment schedule: an initial deposit of $10,000 was due upon execution of the SOW; $30,000 was due in September 2022; $42,500 was due in October 2022; and $42,500 was due in November 2022. Id. ¶ 12, Ex. 1. The MSA provided that any unpaid and undisputed invoices would incur monthly late fees until paid. Id. ¶ 24, Ex. 1.

Although Sechey timely made its initial deposit, it paid only $10,000 of the $30,000 September 2022 payment. Id. ¶¶ 13–14. Pattern nevertheless continued its work on the project and three weeks later Sechey paid the remaining portion of the September payment. Id. ¶¶ 17–18. But Sechey failed to make the third and fourth payments on the agreed upon dates. Id. ¶ 19. Still, Pattern finished developing the website design source files in December 2022, which Sechey accepted as final. Id. ¶¶ 20–22, Ex. 1. Pattern permitted Sechey to include a preview of what its redesigned website would look like in its investor

1   deck. Id. ¶ 26.

2         In January 2023, Sechey paid Pattern $5,000, leaving $82,500 due under the

3   Contract. Id. ¶ 28. A month later, Pattern refused Heintz's offer of equity in Sechey in

4   exchange for a reduction in the amount due under the Contract. Id. ¶ 29. In September

5   2023, Heintz told Pattern's co-founders that Sechey would receive a "significant payment"

6   from a customer in early December 2023 and would pay Pattern as soon as it did. Id. ¶ 53.

7   Pattern alleges that it relied on Heintz's statements when it allowed Sechey to begin using

8   its designs on Sechey.com for a reduced payment of $60,000 due in early December 2023.

9   Id. ¶¶ 31–32, 54. Pattern told Heintz that it would reserve the right to seek payment in full

10  if Sechey did not make the December 2023 payment. Id. ¶ 31.

11        Sechey paid only $2,000 of the $60,000 payment. Id. ¶¶ 32, 35. Pattern alleges that

12  Heintz's representations as to the December 2023 customer payment were "false at the

13  time they were made, Heintz knew they were false, and they were made for the purpose of

14  inducing [Pattern] to allow Defendants to begin using [Pattern's] work product." Id. ¶ 53.

15  Pattern alleges it would not have permitted Sechey to begin using its designs on

16  Sechey.com had it known that Heintz's representations as to the December 2023 payment

17  were "false." Id. ¶¶ 54, 56. Sechey made a $3,000 payment between February and April

18  2024, but over $95,000 (including late fees) remains unpaid under the Contract. Id.

19  ¶¶ 36, 39. Sechey continues to use the design developed by Pattern on Sechey.com. Id.

20  ¶ 32.

21        Based on these allegations, Pattern alleges the following three claims: (1) breach of

22  contract, (2) promissory fraud, and (3) alter ego. See Compl.

23  **II.    LEGAL STANDARD**

24        Under Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss a complaint

25  for failure to state a claim upon which relief may be granted. A complaint must plead

26  "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its

27  face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (200) (cleaned up). A claim is plausible

28  "when the plaintiff pleads factual content that allows the court to draw the reasonable

1 inference that the defendant is liable for the misconduct alleged." Id.

2 Claims for fraud must meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires a party "alleging fraud or mistake [to] state with particularity the circumstances constituting fraud or mistake." Rule 9(b) requires "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007) (cleaned up). "This means that averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." In re Google Assistant Priv. Litig., 546 F. Supp. 3d 945, 955 (N.D. Cal. 2021) (internal quotations omitted).

### III. DISCUSSION

This order addresses Defendants' motion to dismiss Pattern's claims in the following order: (1) alter ego, to the extent it is pleaded as an independent cause of action; (2) breach of contract; and (3) promissory fraud.[1]

#### A. Alter Ego

Pattern alleges alter ego liability as an independent cause of action as to Sechey and Heintz. Compl. ¶¶ 59–68. Defendants argue that Pattern errs by pleading alter ego, a procedural device, as a substantive cause of action. Mot. (dkt. 12) at 20–21. Defendants are correct: there is no "freestanding general alter ego claim that would require a shareholder to be liable for all [of] a company's debts." Ahcom, Ltd. v. Smeding, 623 F.3d 1248, 1252 (9th Cir. 2010) (citing Mesler v. Bragg Mgmt. Co., 39 Cal. 3d 290, 299–301 (1985)); see also Hennessey's Tavern, Inc. v. Am. Air Filter Co., 204 Cal. App. 3d 1351, 1359 (1988) ("A claim against a defendant, based on the alter ego theory, is not itself a claim for substantive relief."). Accordingly, the Court dismisses Pattern's alter ego

---

[1] California law governs the breach of contract claim based on the choice of law clause in the Contract. Compl. ¶ 7, Ex. 1. It also governs the promissory fraud and alter ego claims because Defendants do not dispute that this is a diversity action. See In re Schwarzkopf, 626 F.3d 1032, 1037 (9th Cir. 2010) ("In determining whether alter ego liability applies, [federal courts] apply the law of the forum state.").

4

1  claim to the extent that it is pleaded as an independent cause of action rather than a theory
2  of liability.

### B.  Breach of Contract

Pattern alleges that all three Defendants—"We are Sechey," Sechey, and Heintz—breached the Contract. Compl. ¶¶ 43–48. Defendants Sechey and Heintz do not dispute that "We are Sechey," the only Defendant named in the Contract, breached the Contract. Mot. at 12. Sechey and Heintz instead argue that they cannot be held liable for breach because they are not parties to the Contract. Id. The Court therefore assumes for purposes of this order that the elements of a breach of contract claim under California law have been adequately alleged with respect to "We are Sechey," and denies Defendants' motion to dismiss Pattern's breach of contract claim as to "We are Sechey."

The Court further assumes that, if Heintz or Sechey can be held liable as a non-party to the Contract, the elements of a breach of contract claim would be adequately alleged with respect to them too. Pattern raises two distinct theories for holding Sechey and Heintz, neither a party to the Contract, liable for its performance: (1) mutual mistake (as to Sechey) and (2) alter ego (as to Heintz).[2]  See Compl. ¶¶ 44, 62; Opp'n at 10–12.

### 1.  Mutual Mistake (Breach of Contract as to Sechey)

Pattern alleges that Sechey is liable for breach of contract because Sechey would have been included as a party to the Contract—as opposed to "We are Sechey"—but for mutual mistake. Opp'n at 12. Defendants concede that "We are Sechey's" inclusion as a

---

[2] Pattern raises three additional arguments, none of which is a viable theory of liability. First, it asserts that "non-parties to an agreement can also enter into oral or written agreements to be bound by those same terms." Opp'n at 12. But Pattern alleges no facts to support an inference that Sechey or Heintz entered into an agreement to be bound by the terms of the Contract. Second, Pattern argues that "Sechey took fiscal responsibility for meeting the contractual payment requirements, thereby, per agreement, making all Defendants responsible for contractual compliance." Compl. ¶ 45; see also Opp'n at 11–12 (referring to this as a "mutual performance" theory). Pattern provides no supporting authority for this theory, and the Court is unaware of any. Third, Pattern argues that Sechey is an alter ego of "We are Sechey." Opp'n 13–14. This argument fails too because "We are Sechey" is unincorporated (to the extent it exists at all). Mesler v. Bragg Mgmt. Co., 39 Cal. 3d 290, 300 (1985) (alter ego doctrine requires the use of a corporate form).

5

party to the Contract was a "drafting error." Mot. at 8. But they do not respond to Pattern's argument that Sechey was the mutually intended contracting party.

Under California law, "[w]hen, through … mistake … a written contract fails to express the real intention of the parties, such intention is to be regarded, and the erroneous parts of the writing disregarded." Cal. Civ. Code § 1640. "The doctrine of mistake customarily involves such errors as the nature of the transaction, the identity of the parties, the identity of the things to which the contract relates, or the occurrence of collateral happenings." See Odorizzi v. Bloomfield Sch. Dist., 246 Cal. App. 2d 123, 130 (1966) (emphasis added). Where the mistake is mutual, the court may "reform the [written contract] to conform with the mutual understanding of the parties at the time they entered into it." Hess v. Ford Motor Co., 27 Cal. 4th 516, 524 (2002) (citation omitted); see also Cal. Civ. Code § 3399 (permitting reformation to make "a written contract … truly express the intention of the parties"). A court may consider extrinsic evidence to determine the parties' intent at the time of contracting. French v. Brinkman, 60 Cal. 2d 547, 552–53 (1963).

Neither party disputes that naming "We are Sechey" as a party to the Contract was the result of Pattern's "drafting error." Mot. at 8; Opp'n at 11. Pattern alleges that it only "recently learned that [Sechey] is the corporate form of the 'startup' run by Heintz, which markets through its website, Sechey.com," and claims that "We are Sechey" is merely a "misnomer" for Sechey. Compl. ¶ 5; Opp'n at 5, n. 1. Defendants suggest that, had Heintz reviewed the Contract more thoroughly, she would have corrected the "drafting error" prior to signing. Mot. at 9 (Heintz signed the Contract within twenty-four seconds of opening it and "did not anticipate or notice" that it listed We are Sechey as a contracting party) (citing Compl. Ex. 1). And the Contract itself suggests that Defendants intended Sechey to be a party to the Contract. Heintz signed the Contract on behalf of "We are Sechey Inc." as its "Founder," but she is Sechey's founder. Compl. ¶ 13; Mot. at 8. And the SOW names "Sechey" as the contracting party. Compl. Ex. 1. These inconsistencies plausibly support an inference that both parties intended to name Sechey as the sole

6

1    counterparty and would have done so but for mutual mistake.[3]

2        Defendants argue that Pattern's theory of mistake "weaponize[s]" Pattern's "own

3    error" to hold Heintz, who did not "anticipate or notice" the error, personally liable. Mot.

4    at 9; Reply (dkt. 22) at 4. It does not. Pattern raises mutual mistake as justification for

5    holding Sechey, not Heintz, liable for breach of contract. Opp'n at 10–11. And any

6    potential negligence on Pattern's part to "know or discover facts as to which both parties

7    are under a mistake does not preclude rescission or reformation." Van Meter v. Bent

8    Const. Co., 46 Cal. 2d 588, 594–95 (1951) (explaining that a negligence defense "would

9    result in the virtual destruction of the equitable remedies for relief from mistake").

10       Because Pattern plausibly alleges grounds for reforming the Contract to name

11   Sechey as a contracting party, Defendants' motion to dismiss Pattern's breach of contract

12   claim as to Sechey is **DENIED**.[4]

13           **2.**    **Alter Ego (Breach of Contract as to Heintz)**

14       Pattern alleges that Heintz is liable for Sechey's breach of the Contract because

15   Sechey is Heintz's alter ego. Compl. ¶¶ 62–68; Opp'n at 12. The alter ego doctrine

16   permits a court to "disregard [a] corporate entity" (here, Sechey) to "hold [an] individual

17   shareholder[]" (here, Heintz) "liable for the actions of the corporation." Mesler v. Bragg

18   Mgmt. Co., 39 Cal. 3d 290, 300 (1985). Defendants respond that Pattern's allegations are

19   too conclusory to state a claim. See Mot. at 21.

20       To justify piercing the corporate veil, a party must show (1) such a unity of interest

---

[3] Even if the mistake were not mutual—i.e., if Heintz was not mistaken when she signed the Contract on behalf of "We are Sechey"—the doctrine of equitable estoppel would bar Defendants from benefitting from Heintz's failure to notice or correct the drafting error. See Skulnick v. Roberts Express, Inc., 2 Cal. App. 4th 884, 891 (1992) ("[T]he object of equitable estoppel is to 'prevent a person from asserting a right which has come into existence by contract … where, because of his conduct, silence or omission, it would be unconscionable to allow him to do so.'") (citation omitted); see also In re Marriage of Valle, 35 Cal. App. 3d 837, 840 (1975) ("Generally speaking, the doctrine of equitable estoppel is a rule of fundamental fairness whereby a party is precluded from benefiting from his inconsistent conduct which has induced reliance to the detriment of another.").

[4] Further, because reformation renders "We are Sechey" a non-party to the Contract, Defendants' motion to dismiss the breach of contract claim as to "We are Sechey" is **GRANTED**.

and ownership that the separate personalities of the individual and the corporation cease to exist, and (2) facts such that to deny individual liability would sanction a fraud or promote injustice. Mesler, 39 Cal. 3d at 300. "Conclusory allegations of 'alter ego' status are insufficient to state a claim. Rather, a plaintiff must allege specifically both of the elements of alter ego liability, as a well as facts supporting each." Neilson v. Union Bank of Cal., N.A., 290 F. Supp. 2d 1101, 1116 (C.D. Cal. 2003). Alter ego liability is an extreme and rarely used remedy. Sonora Diamond Corp. v. Superior Court, 83 Cal. App. 4th 523, 539 (2000).

### a.    Unity of Interest

When assessing whether there is a unity of interest, courts consider various factors:

> (1) 'the comingling of funds and other assets of the entities,'
> (2) 'the holding out by one entity [or individual] that it is liable for the debts of another,'
> (3) 'identical equitable ownership of the entities,'
> (4) 'use of the same offices and employees,'
> (5) 'use of one as a mere shell or conduit for the affairs of the other,'
> (6) 'inadequate capitalization,'
> (7) 'disregard of corporate formalities,'
> (8) 'lack of segregation of corporate records,' and
> (9) 'identical directors and officers.'

Stewart v. Screen Gems-EMI Music, Inc., 81 F. Supp. 3d 938, 954 (N.D. Cal. 2015) (citation omitted). "While some courts have said that as few as two satisfied factors may support [a] finding of a unity of interest," one factor is generally insufficient to support such a finding. Reynolds v. Binance Holdings Ltd., 481 F. Supp. 3d 997, 1008 (N.D. Cal. 2020) (citation omitted) (concluding that presence of one factor was insufficient to establish unity of interest).

Here, Pattern's allegations as to most of the unity of interest factors are too conclusory to state a claim. Some examples of Pattern's conclusory allegations include:

- Sechey "failed to conform to corporate formalities … and co-mingled their [sic] funds with Heintz, in such a manner that its corporate entity is a sham." Compl. ¶ 41.

8

- "[A]ll Defendants were the agents, trustees, partners, servants, joint venturers, contractors, alter egos, and/or employees of each other, and the acts and omissions herein alleged were done by them acting through such capacity, scope, and authority, and with the permission and consent of other Defendants, such that each of them are jointly and severally liable to [Pattern]." Id. ¶ 42.
- Sechey "is a mere instrumentality of Heintz," "has no true officers or directors," "observed little or no corporate formalities," "has little or no corporate records," and "was a mere façade for individual dealings of its dominant members." Id. ¶¶ 62–63, 65, 67–68.

Such a "potpourri of boilerplate alter ego allegations … are too conclusory to state an alter ego claim." See Smith v. Lanza, No. 21-CV-08785-JST, 2022 WL 20243472, at *3 (N.D. Cal. Apr. 18, 2022). That said, Pattern's allegations as to two of the unity of interest factors—the second and the sixth—present a closer call.

Under the second factor, courts consider whether an individual or entity is holding itself out as responsible for the debts of another entity. See Stark v. Coker, 20 Cal. 2d 839, 847 (1942). Stark involved an action by a trustee against John and Regina Coker and their corporation to foreclose on a deed of trust. Id. at 840, 848. Even though the deed "was executed by the corporation alone" and "paid from the corporation's bank account," John Coker's claim that "he was personally liable for the obligation to pay" a portion of the note and his efforts to "personally [] negotiat[e] to purchase the note in question" warranted piercing the corporate veil. Id. at 846–47.

Here, Pattern alleges that Heintz, like Coker, personally negotiated with Pattern to have Sechey pay a lower amount under the Contract considering the forthcoming December 2023 customer payment. See id.; Compl. ¶ 51. But Sechey, not Heintz, "took fiscal responsibility for meeting the contractual payment requirements" under the Contract. Compl. ¶¶ 45, 51, 53. And Pattern does not allege that Heintz ever personally guaranteed Sechey's debts or held herself out as being personally liable for payments due under the Contract, as Coker did. See Stark, 20 Cal. 2d at 847. Additionally, no allegations suggest

9

1  that payments were made from anywhere other than Sechey's corporate bank account.
2  See id. at 847; Compl. ¶ 45. On balance, Pattern does not sufficiently plead the second
3  unity of interest factor.
4        Under the sixth factor, courts "consider[] whether the entity from which [p]laintiff
5  seeks to recover is inadequately capitalized." Stewart, 81 F. Supp. 3d at 955. Pattern
6  alleges that (1) Heintz authorized Sechey's entry into a six-figure contract while Sechey
7  was allegedly "insolvent," Compl. ¶ 66; (2) Heintz told Pattern that Sechey had "no cash"
8  and could only make payments under the Contract after receiving seed funding or the
9  December 2023 customer payment, id. ¶¶ 31, 53; and (3) Sechey defaulted on its payment
10 obligations under the Contract over approximately a two-year period, id. ¶¶ 38–39. Taken
11 together, Pattern adequately alleges undercapitalization.
12       As only one factor—undercapitalization—weighs in favor of finding unity of
13 interest among Sechey and Heintz, Pattern has insufficiently pleaded the unity of interest
14 prong. See Associated Vendors, Inc. v. Oakland Meat Co., 210 Cal. App. 2d 825, 841–42
15 (1962) (undercapitalization alone does not require application of alter ego doctrine).
16       Because the alter ego doctrine requires Pattern to sufficiently plead both the unity of
17 interest and inequitable result prongs, Mesler, 39 Cal. 3d at 300, the Court **GRANTS**
18 Defendants' motion to dismiss Pattern's breach of contract claim as to Heintz.

### C.    Promissory Fraud

Pattern alleges that Sechey and Heintz fraudulently induced Pattern to (1) enter the Contract with promises to perform and (2) allow Sechey to use Pattern's designs with promises to make payments towards the Contract after receiving a customer payment in December 2023. Compl. ¶¶ 52–58.

A plaintiff can state a tort claim for promissory fraud if a defendant fraudulently induces him to enter a contract. Lazar v. Superior Ct., 12 Cal. 4th 631, 638 (1996). Under California law, a cause of action for fraud requires the plaintiff to establish: (1) a knowingly false misrepresentation by the defendant (2) made with the intent to deceive or to induce reliance by the plaintiff, (3) justifiable reliance by the plaintiff, and (4) damages.

10

1  Croeni v. Goldstein, 21 Cal. App. 4th 754, 758 (1994).  While mere failure to perform on a
2  contract does not constitute fraud, Rhenigans v. Smith, 161 Cal. 362, 366 (1911), a
3  promise made without intent to perform can be actionable.  Locke v. Warner Bros., Inc.,
4  57 Cal. App. 4th 354, 367 (1997).  Federal Rule of Civil Procedure 9(b) requires that
5  promissory fraud, like all fraud claims, be stated with particularity.  Swartz v. KPMG LLP,
6  476 F.3d 756, 764 (9th Cir. 2007).

### 1. Promises Related to Contract Formation

Pattern alleges that Sechey committed promissory fraud by "entering into the Contract with the intention of deceiving [Pattern] into believing Sechey was going to pay [Pattern] according to the [payment] schedule set forth in the SOW."  Compl. ¶ 52.  Pattern's allegations do not satisfy the heightened pleading requirements for fraud.  "Something more than nonperformance is required to prove the defendant's intent not to perform his promise."  Tenzer v. Superscope, Inc., 39 Cal. 3d 18, 30 (1985).  Here, Pattern fails to allege any facts—let alone with particularity—from which the Court may infer that Sechey intended not to perform when the Contract was formed.  Accordingly, the Court **GRANTS** Defendants' motion to dismiss Pattern's promissory fraud claim relating to the formation of the Contract.

### 2. Promises Related to the December 2023 Customer Payment

Pattern alleges that Heintz falsely represented that Sechey would (1) receive a customer payment in December 2023 and (2) make payments towards the Contract after receiving that payment.  Compl. ¶¶ 53–54; Opp'n at 16–17.  Pattern further alleges that it relied on Heintz's statements when it allowed Sechey to use Pattern's design on Sechey.com.  Compl. ¶¶ 53–56.  Defendants argue that the promissory fraud claims are barred by the economic loss rule because they are "based on the same set of facts and seek[] the same relief" as Pattern's breach of contract claim.[5]  Mot. at 13.

---

[5] Defendants also argue that Pattern's promissory fraud claim does not satisfy Rule 9(b)'s heightened pleading standard.  Mot. at 17–19.  As explained below, the economic loss rule is sufficient grounds to dismiss the promissory fraud claim.  Defendants are likely also correct that Pattern fails to allege with sufficient particularity that Heintz's representations

11

1    "Promissory fraud claims are subject to the economic loss rule." UMG Recordings, Inc. v. Global Eagle Ent., Inc., 117 F. Supp. 3d 1092, 1104 (C.D. Cal. 2015). "Under the economic loss rule, 'purely economic losses are not recoverable in tort.'" R Power Biofuels, LLC v. Chemex LLC, No. 16-CV-00716-LHK, 2017 WL 1164296, at *4 (N.D. Cal. Mar. 29, 2017) (citing NuCal Foods, Inc. v. Quality Egg LLC, 918 F. Supp. 2d 1023, 1028 (E.D. Cal. 2013)). "The purpose of the rule is to 'prevent[] the law of contract and the law of tort from dissolving one into the other.'" Id. (citing Robinson Helicopter Co. v. Dana Corp., 34 Cal. 4th 979, 988 (2004)); Aas v. Superior Court, 24 Cal. 4th 627, 643 (2000) ("A person may not ordinarily recover in tort for the breach of duties that merely restate contractual obligations."), superseded on other grounds by 2002 Cal. Stat. ch. 722.

There are exceptions to the economic loss rule. The rule does not prevent recovery in tort if (1) a "special relationship" exists between the plaintiff and the defendant, J'Aire Corp. v. Gregory, 24 Cal. 3d 799, 804 (1979), or (2) the conduct "violates a duty independent of the contract arising from principles of tort law," Erlich v. Menezes, 21 Cal. 4th 543, 551 (1999) (citation omitted). Pattern does not argue that the special relationship exception applies. As for the independent duty exception, that applies only "[1] where a defendant's actions that constituted breach of contract also caused physical injury; [2] for wrongful discharge in violation of fundamental public policy; or [3] where the plaintiff was fraudulently induced to enter a contract." R Power Biofuels, 2017 WL 1164296, at *10 (citing Erlich, 21 Cal. 4th at 551).

Pattern focuses on the third variant of the independent duty exception—the fraudulent inducement exception. To satisfy this exception, "a plaintiff must allege that (1) promissory fraud has occurred, and (2) promissory fraud induced the plaintiff to enter a new or modified contract." R Power Biofuels, 2017 WL 1164296, at *7 (citing Rosenthal

---

regarding the December 2023 customer payment were knowingly false when made. See In re GlenFed, Inc. Lit., 42 F.3d 1541, 1548–49 (9th Cir. 1994) (en banc), superseded on other grounds by Private Sec. Litig. Reform Act of 1995, 15 U.S.C. § 78u-4(b)(1) (allegation that previously made statement conflicts with present facts is insufficient to establish inference of falsity under Rule 9(b)).

12

v. Great W. Fin. Sec. Corp., 14 Cal. 4th 394, 415 (1996)). Fraudulent inducement requires allegations of "conduct at issue which is independent from the various promises made by the parties in the course of their contractual relationship." Oracle USA, Inc. v. XL Glob. Servs., Inc., No. C 09-00537 MHP, 2009 WL 2084154, at *7 (N.D. Cal. July 13, 2009); see also Foster Poultry Farms v. Alkar-Rapidpak-MP Equip., Inc., 868 F. Supp. 2d 983, 992–93 (E.D. Cal. 2012) (holding that a defendant's promise to comply with the terms of a contract could not fraudulently induce the creation of a new contract). These cases—Foster Poultry Farms and Oracle USA—illustrate the narrowness of the fraudulent inducement exception.

In Foster Poultry Farms, the plaintiff, Foster Farms, entered a written contract to purchase pasteurization equipment from Alkar. 866 F. Supp. 2d at 988. After Foster Farms paid for the equipment, a competitor of Alkar's advised Foster Farms of a pending patent they had to the Alkar equipment. Id. Based on Alkar's warranty against patent infringement claims and its assurances that it stood by this warranty, Foster Farms continued to use Alkar's equipment and was ultimately sued by Alkar's competitor for patent infringement. Id. at 989. After Alkar refused to pay Foster Farms' legal fees and expenses, Foster Farms sued Alkar for fraudulent inducement. Id. The court found that Foster Farms failed to allege that Alkar induced it to enter a new contract and held that Foster Farms' fraud claims were barred by the economic loss doctrine because Foster Farms essentially sought relief for "a fraudulent or bad faith breach of [Alkar's] existing contractual obligation." Id. (emphasis added).

Similarly, in Oracle USA, the plaintiff, Oracle, licensed software and provided consulting services to XL through a series of agreements. 2009 WL 2084154, at *2. Oracle alleged that XL's vice president "promised that XL would pay all outstanding invoices … if Oracle would provide additional [free] consulting services" not contemplated in the original agreement. Id. Oracle agreed to provide the additional consulting services to address XL's outstanding financial commitments. Id. XL still refused to pay its invoices, so Oracle sued for promissory fraud on the grounds that XL

13

induced it to provide free services by falsely promising to "pay what it already owed" under the contract. Id. at *4. The district court dismissed Oracle's fraud claim because "[t]here [was] no conduct at issue which [was] independent from the various promises made by the parties in the course of their contractual relationship." Id. at *4–5 (emphasis added).

The facts of this case are analogous: Pattern relied on Heintz's promise that Sechey would pay what it already owed under the Contract to allow Sechey to begin using Pattern's designs on Sechey.com. Compl. ¶ 31. Whether the promise established a "totally new agreement" or merely modified the Contract, Sechey's failure to pay Pattern constituted conduct that occurred "in the course of their [existing] contractual relationship." See Oracle USA, 2009 WL 2084154, at *4; Foster Poultry Farms, 868 F. Supp. 2d at 993. The statements on which Pattern's promissory fraud claim relies were nothing more than representations that Sechey would adhere to the Contract; they cannot form the basis of a separate fraud claim.

Accordingly, the Court **GRANTS** Defendants' motion to dismiss Pattern's promissory fraud claim relating to the December 2023 customer payment.

## IV. CONCLUSION

For the foregoing reasons, the Court:

- **GRANTS WITHOUT LEAVE TO AMEND** Defendants' motion to dismiss Pattern's alter ego claim as to all Defendants;[6]

- **DENIES** Defendants' motion to dismiss Pattern's breach of contract claim as to Sechey;

- **GRANTS WITH LEAVE TO AMEND** Defendants' motion to dismiss Pattern's breach of contract claim as to We are Sechey and Heintz; and

- **GRANTS WITH LEAVE TO AMEND** Defendants' motion to dismiss Pattern's promissory fraud claim as to all Defendants.

---

[6] Pattern's alter ego claim is facially non-viable as an independent cause of action, so leave to amend is unnecessary. See Foman v. Davis, 371 U.S. 178, 182 (1962).

14

**IT IS SO ORDERED.**

Dated: October 1, 2024



CHARLES R. BREYER
United States District Judge